IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEVEN AFTERGOOD ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 02-1146 (RMU) |
| ) | |
| CENTRAL INTELLIGENCE AGENCY ) | |
| ) | |
| Defendant. ) | |
| ) | |

**PLAINTIFF'S MOTION FOR RECONSIDERATION**

Pursuant to Federal Rules of Civil Procedure 52(b) and 60(b), plaintiff *pro se* Steven Aftergood moves for reconsideration of the Court's February 6, 2004 Order granting the defendant's motion for summary judgment and denying the plaintiff's cross-motion. Grounds for reconsideration include multiple instances of bad faith and contrary record evidence that were not addressed by the Court.

**Introduction**

This is a Freedom of Information Act proceeding in which plaintiff *pro se* Steven Aftergood seeks declassification of the aggregate intelligence budget figure for Fiscal Year 2002. By Memorandum Opinion and Order of February 6, 2004, the Court granted the defendant's motion for summary judgment, finding that the requested information relates to intelligence sources and methods and is therefore exempt from disclosure under FOIA Exemption 3.

The Court determined that one of plaintiff's allegations -- that the Director of Central Intelligence (DCI) made a false statement regarding the secrecy of Energy Department intelligence appropriations -- was not an instance of bad faith. Mem. Opinion, at p. 6.

But there are other grounds in the record for finding that the defendant has acted in bad faith, as well as contrary evidence in the record, that were not addressed by the Court.

## I. The DCI Improperly Modified Evidence

The DCI improperly and materially modified an attachment to his declaration in an apparent violation of court rules that is also an act of bad faith.

DCI Tenet appended a lengthy attachment to his declaration to support his argument that foreign governments could use the 2002 budget total to expose "how and where intelligence funds are transferred for various purposes," which is the intelligence method the Court found to be exempt from disclosure. Unclass. Tenet Decl., 04/04/03, ¶23, Attachment 1.

But the DCI improperly truncated the attachment so as to delete its date of publication in 1996, which <u>preceded</u> the declassification of the 1997 and 1998 budget totals. Aftergood Declaration, ¶¶ 23-24. Pike Declaration, ¶ 3.

Deleting the date of publication from the attachment was a "deceitful" act, for purposes of establishing bad faith, because it obscured the unresolved contradiction in the defendant's position, namely: The intelligence budget totals that were disclosed in 1997 and 1998 did <u>not</u> reveal "how and where intelligence funds are transferred," but defendant nevertheless claims that a two year old budget total, if disclosed today, would reveal that same intelligence method information.

The date of publication is a material part of the referenced document that vitiates its relevance to the present dispute. By deleting it, the DCI was in violation of Federal Rules of Civil Procedure 56(e). ("Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith."). This was an act of bad faith.

## II. Failure to Declassify Historical Budget Data

The spurious character of the Exemption 3 claim is underscored by the defendant's ongoing refusal to declassify historical intelligence budget data that is a half century old. Although defendant declassified the intelligence budget totals in 1997 and 1998 with no adverse impact on any intelligence method, defendant subsequently claimed that similar information from several decades earlier would so expose an intelligence method and is exempt from disclosure under Exemption 3. See Attachment 1 to this motion, letter from defendant, December 14, 2000.[1] Defendant's position is self-evidently false.

If the 1997 and 1998 declassifications did not compromise intelligence sources and methods, then it is obvious that budget figures from half a century ago could not do so. Aftergood Decl., ¶ 21. By withholding such information, defendant has demonstrated that its position on intelligence budget disclosure, including the subject of this proceeding, is compromised by confusion and bad faith.

---

[1] I hereby certify under penalty of perjury that the attachment is an authentic replica of the original (except that I have scored through an old street address).

## III. <u>Contrary Record Evidence</u>

The Court credits the DCI for his candor in naming the precise amount of the 2002 intelligence budget supplemental, $1.694 billion. Mem. Opinion, 02/06/04, at p. 6.

But the true significance of this disclosure, which was made public by Congress and not the DCI, lies in the <u>absence</u> of national security consequences that ensued. No exposure of the asserted intelligence method -- how and where intelligence funds are transferred -- resulted from the publication of this 2002 supplemental budget figure. It therefore constitutes contrary record evidence and demonstrates that defendant's Exemption 3 claim is objectively false.

Likewise, no exposure of the asserted intelligence method ensued from the publication of the 1997 and 1998 intelligence budget totals, even though (unlike the present case) they were consecutive and timely disclosed. These prior disclosures therefore also constitute contrary record evidence.

## <u>The 2002 Figure is Legally Distinct From the 1999 Figure</u>

The Court cited a 1999 ruling which denied release of the 1999 intelligence budget total on grounds that "information tending to reveal the secret transfer and spending of intelligence funds is exempt from disclosure under FOIA as an intelligence method." Mem. Opinion at p. 6, citing *Aftergood v. CIA*, Civ. No. 98-2107 slip op. at 9 (D.D.C. Nov. 15, 1999).

But the factual constellation in that 1999 case was significantly different than in the present proceeding. In particular:

(a) Release of the 1999 figure would have been the "third consecutive year" of disclosure of the intelligence budget total. *Aftergood v. CIA*, Civ. No. 98-2107 slip op. at 7. As such, it

4

might have provided "too much trend information" (*Id.*) in a way that the stand-alone 2002 figure could not.

(b) In the present case, plaintiff has provided affirmative evidence, to which defendant has offered no rebuttal, that intelligence appropriations for the Department of Energy are routinely disclosed and have had no adverse effect on national security or intelligence methods. Siebert Decl., ¶¶ 7-8. These uncontroverted facts were not made available to the 1999 Court, and in fact were concealed by the defendant at that time. Pl.'s Cross Mot. at p. 3, fn. 1.

(c) Since the 1999 ruling, defendant has issued a final administrative FOIA denial of half-century old budget data, contending that disclosure of such historical information would compromise national security and intelligence, as discussed above. This new claim, I believe, is patently false and constitutes evidence of bad faith, as well as bad judgment.

(d) In the present case, but not in 1999, the DCI improperly modified evidence to conceal a material fact (the date of a document offered in evidence), as discussed above.

The stand-alone 2002 budget figure will not "tend[] to reveal the secret transfer and spending of intelligence funds." Pike Decl., ¶¶ 7-10. It is therefore not exempt from FOIA.

## Conclusion

Summary judgment may be granted on the basis of agency affidavits if they "are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F. 2d 724, 738 (D.C. Cir. 1981).

But there are multiple instances of bad faith and contrary evidence in the record that went unreviewed in the Court's Memorandum Opinion. I respectfully suggest that these instances,

5

described above, are sufficient to moderate or nullify the deference to which the DCI's affidavit would ordinarily be entitled.

A de novo review of the matter shows that logically, based on the evidence presented in plaintiff's motion for summary judgment, disclosure of the stand-alone 2002 intelligence budget total today could only do less damage to national security and intelligence sources and methods than did the consecutive, timely disclosures of the 1997 and 1998 budget totals. But that was no damage at all.

For the above-stated reasons, I respectfully move that the Court reconsider its ruling on defendant's motion for summary judgment and plaintiff's cross-motion, and order the release of the requested information.

Dated:   February 17, 2004               Respectfully submitted,

                                         _____
                                         STEVEN AFTERGOOD
                                         Plaintiff *pro se*
                                         2501 M Street, NW #706
                                         Washington, DC   20037
                                         Tel: (202)454-4691

## CERTIFICATE OF SERVICE

I certify that on February 17, 2004, I served a copy of the foregoing by regular United States mail, postage pre-paid, upon:

Robert E. Leidenheimer, Jr., Esq.
Assistant United States Attorney
Judiciary Center Building
555 4th Street, NW Room 10-816
Washington, DC   20530

STEVEN AFTERGOOD
(202)454-4691